UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **SECURE AXCESS, L.L.C.** § | | |
| § | | |
| *Plaintiff,* § | | |
| § | Civil Action No. 6:15-cv-00208 | |
| v. § | | |
| § | LEAD CASE | |
| **HP ENTERPRISE SERVICES, LLC** § | | |
| § | | |
| *Defendant.* § | Jury Trial Demanded | |

**PLAINTIFF SECURE AXCESS, L.L.C.'S RESPONSE TO DEFENDANTS'
MOTION TO COMPEL COMPLIANCE WITH PATENT RULE 3-1**

Plaintiff Secure Axcess, L.L.C. ("Secure Axcess") submits this response in opposition to the Defendants' Motion to Compel Compliance with Local Patent Rule 3-1 (Docket No. 67). For the reasons below, Secure Axcess respectfully requests the Court deny the Defendants' motion.

## I. INTRODUCTION

The Court should deny the moving Defendants' motion to compel. The Defendants have notice of Secure Axcess's infringement theories and what products are accused of infringement, including Secure Axcess's common OpenFlow-based theory. But instead of trying to move this case towards a resolution on the merits—like Defendant NEC did when it declined to join this Motion—the moving Defendants filed this motion to compel.

The motion puts form above substance. Though it is undisputed that their switches and controllers are marketed as complying with the OpenFlow standard, the moving Defendants want Secure Axcess to engage in a copy-and-paste exercise and provide a unique claim chart for each OpenFlow-compliant product. And they seek that result even though Secure Axcess's

allegations would look the same based on the information that is publicly available: the products are alleged to infringe due to their OpenFlow compliance.

HP's individual attacks fail for largely the same reasons. Secure Axcess has charted the asserted claims based on the ProVision ASIC, an integrated circuit that is included in a number of HP switches. But rather than accept a single, ProVision ASIC-based claim chart for those products, HP seeks to have Secure Axcess provide essentially copies of the same claim chart across each of the ProVision ASIC-containing different switch lines. Like the Defendants' OpenFlow-based complaints, that approach is not about providing the Defendants with notice; it is about increasing the burden on Secure Axcess to enforce its rights.

Should more detail in Secure Axcess's infringement contentions be required, Secure Axcess respectfully requests that it supplement its infringement contentions after receiving the Defendants' internal technical documents and source code. Secure Axcess's infringement contentions were based on the publicly available information it was able to ascertain; further granularity in its contentions implicate the Defendants' sensitive technical information. For these reasons, and the ones below, Secure Axcess respectfully requests that the Court deny the Defendants' motion.

## II. BACKGROUND

Secure Axcess filed this action against Fujitsu, Ericsson, NEC, and HP in March, 2015. Docket No. 1. On November 13, 2015, Secure Axcess served infringement contentions on the Defendants. Secure Axcess alleged that a number of the Defendants' network switches and controllers infringed various claims of the two Patents-in-Suit, U.S. Patent Nos. 6,172,990 ("the '990 Patent") and 6,108,713 ("the '713 Patent"). *See, e.g.*, Docket No. 67-1, at 5 (listing accused products for HP). For all of the Defendants, Secure Axcess alleged that the accused switches and

controllers infringed by virtue of their compliance with the OpenFlow standard. *See, e.g., id.* at 11. The OpenFlow standard is an engineering standard managed by the Open Networking Consortium, which includes as members Ericsson, Fujitsu, NEC, and HP. Secure Axcess also provided non-OpenFlow-based claim charts for HP. Specifically, Secure Axcess also provided charts that detailed how switches that contain HP's ProVision Application Specific Integrated Circuit ("ASIC") infringed the asserted claims of the '990 and '713 Patents. *See id.* at 39.

In January, Fujitsu, HP, and Ericsson (but not NEC) complained about the sufficiency of Secure Axcess's infringement contentions and met-and-conferred on a motion to compel. As part of the negotiations, Secure Axcess did not oppose an extension of time for the Defendants to serve invalidity contentions, which were served on February 5, 2016. Fujitsu, HP, and Ericsson filed this motion the same day. On February 22, 2016, Secure Axcess and Ericsson filed a joint stipulation of dismissal without prejudice. Docket No. 69.

### III. APPLICABLE LAW

The purpose of infringement contentions under the Patent Rules is to provide notice of the plaintiff's infringement theories. The contentions must detail "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754, 755 (E.D. Tex. 2004). The contentions, however, are not intended to "require a party to set forth a *prima facie* case of infringement and evidence in support thereof":

> Infringement contentions are not intended to require a party to set forth a prima facie case of infringement and evidence in support thereof. While infringement contentions must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for

> summary judgment on the issue of infringement because infringement contentions "are not meant to provide a forum for litigation on the substantive issues."

*Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 U.S. Dist. LEXIS 73217, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) (quoting *Linex Tech., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008)).

### IV. ARGUMENT

#### A. The Infringement Contentions Adequately Identified the Accused Instrumentalities Under Patent Rule 3-1(b)

Secure Axcess's infringement contentions sufficiently identify the accused products. Secure Axcess specifically listed the switches and controllers that it alleges infringe the '990 and '713 Patents, products that the Defendants' public documents indicate comply with the OpenFlow standard.

Secure Axcess identified specific products for each Defendant. Indeed, NEC did not allege that Secure Axcess's identification of products did not provide sufficient notice, and it does not join this motion. For Fujitsu, Secure Axcess expressly listed specific products. Fujitsu asserts that those products were not sold in the United States (and that some are not OpenFlow-complaint). But that is not an issue of whether Fujitsu has notice of Secure Axcess's OpenFlow-based infringement theory—it is an issue of the merits of Fujitsu's liability defense.[1]

For HP, Secure Axcess specifically identified the OpenFlow-compliant switches and controllers sold by HP that were publicly available and known to Secure Axcess: the VAN SDN controller and the FlexFabric 12900, 11900, 5930, and 5700 series, 12500 series, 10500 series, 8200 series, 5920 series, 5900 series, 5500 HI series, 5500 EI series, 3800 series, 2920 series, 3500 series, 5400 series, 6200 series, 6600 series, and 5400R series. Docket No. 67-1, at 5. HP

---

[1] Based on Fujitsu's representations, the parties are in the meet-and-confer process.

wrongly contends that this list "fails to . . . specifically identify" any HP product—the list expressly identifies a number of specific product models that HP marks as OpenFlow compliant, which complies with the Patent Rules. *See* P.R. 3-1(b) ("Each product, device, and apparatus must be identified by name or model number, if known.").

HP ignores that product listing because Secure Axcess also generally accused of infringement all HP OpenFlow-compliant switches and controllers. Docket No. 67, at 5. But that accusation adequately puts HP on notice of the products accused of infringement—HP knows which of its switches and controllers are OpenFlow compliant (HP makes them that way). The identity of those products is information within HP's possession.

The Defendants' motion also lacks practical substance. Secure Axcess is entitled to discovery regarding the products listed in its infringement contentions and "all reasonably similar products." *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 656 (E.D. Tex. 2009). Thus, even if the Defendants prevail and Secure Axcess's infringement contentions are limited to the specific models listed in the cover pleading, Secure Axcess will still obtain discovery on (and will then amend its contentions to cover) all of the Defendants' OpenFlow-compliant switches and controllers.

### B. The Infringement Contentions Adequately Specified How Each Product Infringes Under Patent Rule 3-1(c)

#### 1. Secure Axcess's OpenFlow-Based Claim Charts Provided the Defendants With Sufficient Notice

Secure Axcess's OpenFlow-based claim charts sufficiently put the Defendants on notice of Secure Axcess's infringement theories. "[T]he use of an industry standard as the basis for infringement contentions is permissible, and in certain cases may even be sufficient to put a

defendant on notice of the plaintiff's assertions of infringement." *Linex*, 628 F. Supp. 2d at 709. This is one of those cases.

The OpenFlow specification is a detailed specification that requires a specific match-action process to route packets within a network switch. *See* Exhibit 1 (OpenFlow Switch Specificaiton Version 1.3.2). The flow-table architecture and the accompanying match-action processing is required to implement an OpenFlow-compliant product and has been from the first version of the OpenFlow standard. *See id.* at 8 ("This document describes the requirements of an OpenFlow Switch."); *id.* at 13 ("An OpenFlow switch is required to have at least one flow table . . ."). It is that architecture that forms the basis of Secure Axcess's infringement claims.

This is not a case in which the standard "fails to delineate details which are critical to an assertion or determination of infringement." *Linex*, 628 F. Supp. 2d at 709. Indeed, despite the moving Defendants' bald allegations about the sufficiency of Secure Axcess's infringement contentions, defendant NEC—who was served with the same OpenFlow-based contentions—did not complain about Secure Axcess's contentions and does not join the motion to compel.

The specific implementation details that the Defendants point to are not critical to Secure Axcess's OpenFlow-based infringement theory. The Defendants merely allege that there are "a variety of implementation techniques," Docket No. 67, at 7, but do not explain how those supposed differences relate to Secure Axcess's infringement allegations. For the '713 Patent, for example, the Defendants acknowledge that the infringement contentions point to their OpenFlow-compliant controllers as meeting the "a parallel event processor" limitation. Docket No. 67, at 8. They contend, however, that the interface between the controller and the switch is implementation-specific. *Id.* But they fail to provide any indication of how that different implementation affects Secure Axcess's infringement theory.

The Defendants also misread Secure Axesss's infringement allegations. They allege with regard to the '990 Patent that only the multiple-table-embodiment of the OpenFlow specification is alleged to meet the "appending" limitation because the example shows packet data streamed from one table to the next. *Id.* The infringement contentions show that the Defendants' assertion is incorrect. *See* Docket No. 67-1, at 24 (alleging that the claimed appending occurs "before outputting the packet to a subsequent table, the controller, *or the egress port*"). Regardless, the Defendants' arguments are not directed to notice; they instead relates to the merits of whether the multiple-table implementation is present in the Accused Products.

The Defendants' allegations that the OpenFlow specification fails to provide sufficient notice of a number of claim elements also falls flat. They incorrectly contend that Secure Axcess's infringement contentions fail to identify a "physical layer" or "upper layer." Docket No. 67, at 9. Secure Axcess's infringement contentions expressly identify the packet received at the "Packet In" entry point of the switch as one received at an exemplary "physical layer" and identify packets routed through the "Packet Out" portion of the switch (as well as any match-action tables between) as ones part of an "upper layer." Docket No. 67-1, at 16–18.

The Defendants' arguments concerning the "identifying a first word location," "storing," and "appending" limitations also lack merit. For starters, the Defendants do not cite or attach the full infringement contentions for these limitations. They instead only attach an incomplete chart (to then argue that the chart is somehow incomplete). *See* Docket No. 67-1, at 20–23. But the full claim charts show that the Defendants' motion should be denied.

For the "identifying a first word location" limitation, Secure Axcess pointed to fields (such as ingress port, metadata, and the like) within a packet as locations in the packet that are identified when matched against the corresponding entry in the flow table. Exhibit 2, at 24–28.

With regard to the "storing" limitation, Secure Axcess pointed to port, metadata, and action set data as being stored in the switch as part of the match-action processing. Exhibit 2, at 32. Lastly, Secure Axcess pointed to the data as being appended to the packet data as it flows through the switch and provided a doctrine of equivalents theory. *Id.* at 33–34.

The Defendants arguments regarding the dependent claims also fail. They do not point to a single limitation from those claims that they contend is insufficiently identified. They thus fail to meet their burden on the motion for the '990 Patent.

The Defendants' arguments concerning the '713 Patent are also incorrect. As explained above, Secure Axcess identified the "physical layer," "upper layer," and "parallel event processor" limitations. The Defendants' assertion regarding the "second bus" limitation also misses the mark: the Defendants do not contend that they are unaware of what the accused "second bus" is; they simply allege Secure Axcess did not cite the OpenFlow specification to support its allegation. *See* Docket No. 67, at 12. That is not a notice issue. In any event, the Defendants' reading of the infringement contentions is also incorrect. *See* Docket No. 67-1, at 64–65 (citing "OpenFlow Channel" and "OpenFlow Protocol Overview" sections of the specification in relation to "second bus" limitation).

> 2. **Secure Axcess's Infringement Contentions Against ProVision ASIC-Based Products Are Sufficient**

HP's arguments regarding Secure Axcess's ProVision ASIC-based allegations also lack merit. Secure Axcess accused of infringement the HP switches it was aware of that, according to public information, contain the ProVision ASIC. *See* Docket No. 67-1, at 5 (accusing of infringement "[n]etwork devices that contain a ProVision [ASIC], including . . ."). That information—which switches include a ProVision ASIC—is held and known by HP. Similarly, Secure Axcess included "similar ASICs" in its contentions because it would be entitled to

discovery of reasonably similar ASICs in connection with this case anyway. *See Honeywell*, 655 F. Supp. 2d at 656.

HP's challenge to the adequacy of Secure Axcess's claim charts on dependent claim 5 of the '990 Patent (which Secure Axcess learned about for the first time in this motion) and the '713 Patent also fail. HP does not allege that it lacks notice of Secure Axcess's infringement theory for claim 5 of the '990 Patent; it instead chastises Secure Axcess for relying on information and belief about the table-lookup processing of the ProVision ASIC for that dependent claim. But that allegation does not sound in a lack of notice of what Secure Axcess contends meets the additional limitations of claim 5 (namely, table-lookup processing on identified types of data). Similarly, HP's recycled OpenFlow argument concerning the '713 Patent fails—the HP's VAN controller is an OpenFlow-compliant product and, as such, is alleged to infringe under Secure Axcess's OpenFlow-based theory.

        **C.**    **At a Minimum, Secure Axcess Should Be Allowed to Supplement Its Infringement Contentions After the Defendants Produce Their Technical Documents, Including Source Code**

Secure Axcess's infringement contentions comply with the Patent Rules. Should the Court conclude otherwise, however, Secure Axcess requests that the Court allow it to supplement its infringement contentions after receiving the Defendants' technical information, including source code. Secure Axcess provided the detail it could relying on public information. Indeed, while the Defendants assert that Secure Axcess could have relied on additional publicly available information to provide more detailed contentions, Docket No. 67, at 14, they fail to identify any publicly available information that Secure Axcess could have relied upon to craft more detailed contentions, let alone information that provides more granular detail than the OpenFlow standard documents.

Thus, the level of detail that the Defendants request is also likely to require a review of their source code and internal technical documents. But none of the Defendants have offered their source code for review, though there is a Protective Order that provides for the review of source code and Patent Rule 3-4(a) required production of source code when the Defendants served their invalidity contentions in early February. *See* P.R. 3-4(a). Courts in this District have recognized that inspection of source code may need occur prior to service of infringement contentions in certain instances. *See* Sample Discovery Order for Patent Cases Assigned to Judge Rodney Gilstrap and Judge Roy Payne, *available at* http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22240, at 3 (extending infringement contentions deadline until thirty days after production of source code in certain cases). While Secure Axcess believes its infringement contentions satisfy the Patent Rules, should the Court conclude otherwise, Secure Axcess requests that be allowed to supplement its contentions after receiving the Defendants' internal technical documents, including source code.

## V. CONCLUSION

For the reasons outlined above, Secure Axcess respectfully requests that the Court deny the Defendants' motion.

Dated: February 22, 2016

                                              Respectfully submitted,

                                              **Christian Hurt**

                                              **Derek Gilliland**
                                              Texas State Bar No. 24007239

**Nix Patterson & Roach, L.L.P.**
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.5389 (facsimile)
dgilliland@nixlawfirm.com
Attorney in Charge

**Kirk Voss**
Texas State Bar No. 24075229
**Winn Cutler**
Texas State Bar No. 24177364
**Christian Hurt**
Texas State Bar No. 24059987
**Ross Leonoudakis**
Texas State Bar No. 24087915

**Nix Patterson & Roach, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@me.com
andrewjwright@me.com
kirkvoss@me.com
winncutler@nixlawfirm.com
christianhurt@nixlawfirm.com
rossl@nixlawfirm.com

**Ben King**
Texas State Bar No. 24048592
**Nix Patterson & Roach, L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
benking@nixlawfirm.com

**ATTORNEYS FOR PLAINTIFF
SECURE AXCESS, L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via the Court's electronic filing system on all

counsel who have consented to electronic service on this the 22nd day of February, 2016.

*[signature]*

_____

**NIX PATTERSON & ROACH, L.L.P.**